**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **BRENDA GALE LAMBERT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **2:09-CV-380-TFM** |
| **MICHAEL J. ASTRUE,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Following administrative denial of her application for supplemental security income benefits under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381 *et seq*., Brenda Gale Lambert ("Lambert") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision.   When the Appeals Council rejected review of this decision, it became the final decision of the Commissioner of Social Security ("Commissioner").   Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained,  the court AFFIRMS THE COMMISSIONER'S decision.

### I.    STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is limited.    The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982).  This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and

the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), citing *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.   ADMINISTRATIVE FINDINGS

Lambert, age 49 at the time of the hearing, completed the eighth grade. Lambert's past relevant work includes employment as a cook, sewing machine operator, and self-employed pressure washer. She has not engaged in substantial gainful work activity

since the application date of February 13, 2006.  Lambert's application claims she is unable to work because of post traumatic stress disorder, cirrhosis of the liver, panic attacks, hepatitis, and a crushed wrist.[1]

During Lambert's administrative hearing, the ALJ asked whether she had a driver's license.  Lambert explained that her Alabama license had been suspended for reasons she could not remember and that she never sought to have it reissued.  Under further questioning by the ALJ, she acknowledged that it was suspended due to her drinking problem and she didn't seek reissuance because she "afraid [she] would get out and drink and drive."[2]  Lambert told the ALJ that she did not drive and depended on her mother, but later admitted that she does still drive.[3]  After a review of Lambert's work history, Lambert stated that her primary disabling condition is post traumatic stress disorder (PTSD) due to childhood sexual abuse.  Lambert said that the PTSD causes panic attacks and that she takes Cymbalta for depression and Seroquel for sleep.  She said that both medicines are helpful.[4]

Lambert struggled to remember the name of the doctor (Serravezza) who treats her every three months at a mental health clinic.  She has discussed her alcohol problem with Dr. Serravezza, and reported being sober for four months.[5]  Lambert has limited use of her left hand due to falling from a pier, but is right-handed and has no problems picking

---

[1] R. at 113.
[2] R. at 31-32.
[3] R. at 33; 59, 60-61.
[4] R. at 39.
[5] R. at 41.

objects up with that hand.[6]  Under questioning by her own counsel, Lambert said she was hospitalized seven months prior for planning to commit suicide.[7]  Depression often causes Lambert to sometimes close all the windows, stay in bed, and not communicate with others for two or three days at a time.  She is overtaken by panic attacks at least three times per month - they sometimes occur when she is driving or when she is in a crowd.[8]  Lambert reported that Dr. Serravezza was aware of her suicidal thoughts but did not do anything more than discuss the matter during appointments.[9]  Lambert's daily activities include helping her mother with dusting and laundry.  She also reported that she reads, works crossword puzzles, watches television, visits with friends, goes out 1-3 times a week, and goes out to eat and drink.[10]

The ALJ reviewed Lambert's medical records which showed a history of alcohol abuse, IV drug abuse, Hepatitis C, and treatment for injuries suffered in her fall from a pier.  Residual functional capacity (RFC) findings from the State Agency Disability Specialist indicated Lambert can occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds.  Lambert was found able to sit, stand and/or walk about 6 hours in an 8-hour day.  The medical evidence led the ALJ to find Lambert is physically capable of performing restricted light work due to her inability to use her left hand.[11]

The ALJ's review of Lambert's mental health records showed that Dr. Stephen Davis attributed her panic attacks to alcoholism.  On occasion, Dr. Davis refused to

---

[6] R. at 52-54.
[7] R. at 56-58; 62-63.
[8] R. at 59.
[9] R. at 63.
[10] R. at 60, 142.
[11] R. 16-18.

comply with Lambert's requests that he authorize refills for prescriptions of Lorcet, Xanax, Ativan, and Lortab.[12]  Lambert was seen at South Central Alabama Mental Health Center where staff noted that she did well on medication but was noncompliant at times.[13]  The last treatment note by Dr. Serravezza, dated May 29, 2007, reported that Lambert was benefitting from medical treatment.  The ALJ noted the inconsistency between that treatment note and a mental residual functional capacity form completed by Dr. Serravezza on the same day.  Dr. Serravezza circled "marked" or "extreme" in every functional area listed on the form despite Lambert's progress with medication.[14]

Dr. Robert A. DeFrancisco evaluated Lambert on May 8, 2006.  He diagnosed alcoholism with partial remission, history of panic disorder, probable low average intelligence, and physical problems associated with alcoholism.  Dr. DeFrancisco concluded that "from a psychological perspective, not withstanding her physical issues, [Lambert] could probably carry out, remember instructions, and handle work pressures if she has done that in the past if she is able to withstand them physically."[15]  Donald Hinton, Ph.D., reviewed Lambert's psychiatric records for the State Agency on May 22, 2006.  He concluded Lambert has mild restrictions in daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace.  Dr. Hinton found Lambert has no episodes of decompensation.[16]  Dr. Hinton's mental functional capacity assessment opines Lambert is able to understand,

---

[12] R. at 19; 198-207.
[13] R. at 20.
[14] R. at 20, 22.
[15] R. at 237.
[16] R. at 249.

remember, and carry out short and simple instructions for two hour periods. Restrictions on her employment are limited contact with the general public and fellow employees, with minimal changes in work setting.[17]

Fred Murphy provided vocational expert (VE) testimony at Lambert's administrative hearing. The ALJ asked Murphy whether jobs exist in the light work category that accommodate Lambert's inability to use fully use her left hand, and Murphy confirmed that such jobs are available in the national economy.[18] The ALJ asked Murphy to assume Lambert can understand, remember, and carry out short and simple instructions; is permitted to have usual contact with the general public and limited contact with fellow employees; should have supportive and uncomplicated instructions and criticism; and able to use her left hand only as a support for her dominant (right) hand.[19] Murphy replied that Lambert could work as a housekeeper, nonpostal mail clerk, or a parking lot attendant.[20] Lambert's counsel asked Murphy whether a person limited by the mental residual functional capacity form completed by Dr. Serravezza would be able to perform any work. Murphy responded that the marked and extreme limitations indicated by that form would preclude all work.[21]

The ALJ's decision emphasized "significant gaps" in Lambert's pursuit of mental health treatment despite the availability of free community resources. His review of the record showed low dosages of psychotropic medications, which indicate conservative

---

[17] R. at 263.
[18] R. at 65.
[19] R. at 67-68.
[20] R. at 68-69.
[21] R. at 69.

treatment by her caregivers, and beneficial results from these low dosages.  The opinion of the treating psychiatrist, Dr. Serravezza, was discounted because her findings of "marked" or "extreme" limitations in every functional area are inconsistent with her findings that Lambert was benefitting from medical treatment.[22]  The ALJ noted the corresponding finding by Dr. DeFrancisco that Lambert is not mentally disabled, but is in fact able to perform simple work that she is physically able to accomplish in light of her alcohol-related illnesses.  The ALJ gave significant weight to Dr. Hinton's findings that Lambert is able to work with the noted limitations.[23]  The ALJ adopted Dr. Hinton's findings that Lambert has mild limitations in her activities of daily living, with moderate limitations in social functioning and ability to maintain concentration, persistence, or pace.[24]

The ALJ found Lambert is indeed severely impaired by all conditions listed on her application, in addition to having memory problems.[25]  The ALJ found this combination of impairments does not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I.[26]  The ALJ concluded Lambert is unable to perform any past relevant work and cited VE testimony that she can work as a housekeeper, nonpostal mail clerk, or parking lot attendant.  The decision emphasized that all jobs can be performed with one hand and classified as light, unskilled work.[27] The ALJ addressed the hypothetical posed to the VE by Lambert's counsel by reiterating

---

[22] R. at 22.
[23] R. at 22-23.
[24] R. at 23-24.
[25] R. at 13.
[26] R. at 13.
[27] R. at 24, 25.

that Dr. Serravezza's mental residual functional capacity form conflicted with her treatment notes of the same day.  The ALJ also decided that overwhelming record evidence shows that Lambert's condition improves when she is compliant.[28]  The finding that Lambert can perform the work identified by the VE led the ALJ to conclude she is not entitled to disability benefits under the Act.[29]

### III.  ISSUES

Lambert raises two issues for judicial review:

1.   Whether the ALJ properly evaluated the opinion from Lambert's treating psychiatrist; and

2.  Whether the ALJ failed to consider the impact of Lambert's functional ability as required by Social Security Ruling (SSR) 96-8.

### IV.  DISCUSSION

**1.  <u>The ALJ properly evaluated the opinion of the treating psychiatrist</u>.**

Lambert argues the ALJ did not give Dr. Serravezza's treating opinion the deference due it  under SSA regulations, and that the adoption of the State Agency opinion regarding her mental abilities was improper.  The Commissioner responds the ALJ's treatment of the opinion was correctly evaluated under existing precedent and regulations.

A treating physician's opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'"  *Phillips v. Barnhart,* 357 F.3d 1232,

---

[28] R. at 25.
[29] R. at 26.  The ALJ's disability analysis followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520  and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

1240 (11th Cir. 2004), citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"Good cause" is present where the "(1) treating physician's opinion was not bolstered by

the evidence; (2) evidence supported a contrary finding; or (3) treating physician's

opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at

1241, citing *Lewis.* When assessing medical evidence, an "ALJ [is] required to state with

particularity the weight [given] the different medical opinions and the reasons therefore."

*Sharfarz v. Bowen,* 825 F.2d 278, 279 (11th Cir.1987) (per curiam). Social security

regulations require an ALJ evaluating medical opinion evidence to consider a variety of

factors, including the examining and treatment relationships, the specialization of the

person giving the opinion, and how well the record supports the opinion in question. *See*

20 C.F.R. § 404.1527(d)(1)-(6). "The weighing of evidence is a function of the

factfinder, not of the district court. The question is not whether substantial evidence

supports a finding made by the district court but whether substantial evidence supports a

finding made by the Secretary." *Graham v. Bowen,* 790 F.2d 1572, 1575 (11th Cir. 1986).

Lambert argues the ALJ did not demonstrate good cause for rejecting Dr.

Serravezza's opinion and cites SSR 96-2p for the principle that even where a treating

source's medical opinion is not entitled to controlling weight, the opinion need not be

rejected. The ALJ repeatedly cited good cause to reject Dr. Serravezza's opinion by

identifying the conflict between the mental residual functional capacity form and

treatment notes of the same day which commented on Lambert's good response to

treatment.[30]  Further, the ALJ questioned Dr. Serravezza's omission of any reference to

Lambert's alcohol abuse in her mental residual functional capacity form.[31]  The

Commissioner correctly notes that Lambert's credibility was badly damaged during the

hearing because of her inconsistent reports about driving, and the strong indications that

Lambert was seeking and abusing prescription drugs.[32]

    Given the undependable nature of Dr. Serravezza's opinion, the ALJ decision

cited Dr. DeFrancisco's findings that Lambert is mentally able to perform work.[33]  Dr.

Hinton's opinion was consistent with Dr. DeFrancisco's report that Lambert can perform

work suited to her intelligence level, and thus provided substantial support for the ALJ's

decision to adopt his findings.  *See Poellnitz v. Astrue,*, No. 09-11862, 2009 WL

3365953, at *2-3 (11th Cir. Oct. 21, 2000) (unpublished) (holding that ALJ may rely on

the opinion of a non-examining state agency psychologist when the opinion is consistent

with the other findings of record.)  The ALJ also considered Lambert's daily activities of

light housekeeping, going out 1-3 times a week, visiting, and going out eating and

drinking.[34]

    Dr. Serravezza's opinion was inconsistent with her own medical records, thus

providing good cause to reject the findings in the form.  *See Phillips, id.* at 1241.  The

court finds the ALJ gave did not err in his decision to discredit her opinion regarding

---

[30] R. at 20, 22, 25.
[31] R. at 54-55.
[32] Def. Br. at 12, n.5.
[33] R. at 21, 22.
[34] R. at 16.

Lambert's mental ability to work, but instead, correctly applied circuit precedent in his careful evaluation of the mental health evidence in this case.

### 2. The ALJ properly evaluated Lambert's mental limitations in the context of work-related functions.

Lambert argues the ALJ did not comply with SSR 96-8P because he did not assess the impact of her mental limitations on work-related functions.  The Commissioner advances an argument of harmless error because the mental limitations were included in the hypothetical posed to the VE, thus providing substantial evidence for the ALJ's conclusions.

Lambert urges reversal because SSR 96-8p requires an analysis of  a claimant's "abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."[35]  However, these functions are addressed by the ALJ's review of Lambert's mental health history and treatment, and discussion of opinions from Drs. Serravezza and DeFrancisco.  The credible limitations set forth by Dr. Hinton were posed by the ALJ to the VE during the hearing and incorporated into the occupations deemed within Lambert's ability.[36]  A VE's testimony constitutes substantial evidence where the ALJ poses a hypothetical which contains all of the claimant's impairments.  *See Vega v. Comm'r of Soc. Sec.,* 265 F.3d 1214, 1220 (11th Cir. 2001).

---

[35] Pl. Br. at 13-14.
[36] R. at 23; 67-69.

The ALJ fully discussed Lambert's mental limitations in the context of work activity and presented those limitations to the VE.  The record supports the ALJ's reliance on the VE's testimony that Lambert is capable of performing work in the national economy, and there is no reversible error as to this issue.

## V.   CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law.  It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**    A separate judgment is entered herewith.

DONE this 2nd day of August, 2010.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE